```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA

                        CHARLESTON
```

**THOMAS J. SAVOCA,**

      **Movant,**

**v.**                                            **Case No. 2:06-cv-00572**
                                                  **Case No. 2:03-cr-00194-01**

**UNITED STATES OF AMERICA,**

      **Respondent.**


## **PROPOSED FINDINGS AND RECOMMENDATION**

Pending is the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 filed on July 21, 2006, by Movant, Thomas J. Savoca (hereinafter "Defendant"). (Docket sheet document # 197). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(b).

## **PROCEDURAL HISTORY**

On August 20, 2003, Defendant and his co-defendant, Carlos Santos, were indicted in a two-count indictment charging them with aggravated bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d) and 18 U.S.C. § 2 (Count One), and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Two). The charges stemmed from the armed robbery of approximately $308,000 from Trader's Bank in Ripley,

West Virginia, on Saturday, July 26, 2003.

Defendant and his accomplice, Carlos Santos, were convicted by a jury of both counts after a three day trial. The defense presented no evidence.

Defendant was sentenced to serve 384 months in prison (216 on Count One, 168 months on Count Two, consecutive), to be followed by five years on supervised release. (Judgment in a Criminal Case, October 13, 2004, # 131, amended to correct Defendant's U.S. Marshals Service number by Order entered October 18, 2004, # 139).

Defendant's direct appeal was unsuccessful. <u>United States v. Savoca</u>, No. 04-4886, 156 Fed. Appx. 545 (4th Cir. Nov. 17, 2005), <u>cert. denied</u>, 126 S. Ct. 1407 (2006). The Supreme Court denied the petition for a writ of certiorari on February 21, 2006; thus the § 2255 was timely filed.

The United States submitted a Response (# 201), and Defendant submitted a Reply (# 205) and a Supplemental Motion to Amend his § 2255 Motion (# 221).

## **FACTS OF THE CASE**

The following facts are paraphrased from the United States' Brief of Appellee, in Defendant's direct appeal to the United States Court of Appeals for the Fourth Circuit:

> On Saturday, July 26, 2003, at approximately 11:33 a.m., Traders Bank in Ripley, West Virginia was robbed at gun point. In as little as four minutes, two robbers stole over $308,000 from two teller drawers and the bank's vault.

The two robbers entered through the main entrance of the bank. Once inside, they stopped at the new accounts desk, pulled out guns and yelled at the tellers not to move and to keep their hands up. Both robbers were wearing full face masks, long-sleeved dark plaid flannel shirts, gloves, and dark pants. One was wearing a cap.

Pointing a silver pistol at the two tellers, one robber went to the left side of the bank to the teller line where he took money from the two teller drawers, including $200 of bait money. This robber was described by the witnesses as speaking with a Mexican or Hispanic accent and described by one witness as having dark skin.

While one robber turned left and went behind the teller line, the other proceeded to the right to a back office where a clerk was shutting down computers for the day. Pointing a black handgun at her and asking for money, the robber came behind her with the gun and took her out of the office.

At this time, the branch manager heard the commotion and reached under his desk for the alarm. Before he could reach the alarm, the robber pointed the gun at him, yelled at him not to "hit that button" and ordered him out of his office. The robber grabbed the branch manager and jammed the gun in the back of his shirt collar to force his head down. The branch manager was forced to lie on the floor in front of the teller line while the clerk was ordered to open the vault.

The clerk used keys to open the vault door, but she did not have the combination. Then the robber, again holding the gun to the branch manager's neck, ordered him to open the vault, which he did. The robber took the money, leaving $2,000 in bait money in plain view.

The robbers fled from the bank in a light-colored Ford Taurus. A citizen got the license tag number. Shortly thereafter, another citizen saw the robbers switch from the Taurus to a bronze Chevy van.

Police were alerted to be on the lookout for the Chevy van. A Wood County, West Virginia deputy sheriff spotted the van and attempted to pull it over. A high speed chase ensued, with the van deliberately colliding with other motorists. The chase continued into Ohio, where the van driver attempted to avoid police "stop

sticks" by exiting from the interstate, colliding with more vehicles in Marietta, Ohio, and re-entering the interstate. The van driver proceeded into a construction zone, and crashed into the back of a dump truck. The robbers attempted to flee on foot, but were arrested.

The money from Traders Bank was recovered from the van, along with the bait money from the teller's drawer, a police scanner, police radio frequency guides, plaid shirts, and a pair of black leather gloves.

A citizen's tip led police to find masks, a baseball cap, and two weapons and bullets along the interstate. DNA analysis revealed that the robbers had worn the masks.

(# 201, Attachment A, at 10-16.) [Citations to the Joint Appendix omitted.]

## **GROUNDS FOR RELIEF**

Defendant presents the following grounds for relief:

Ground one: Whether the movant was denied the effective assistance of counsel guaranteed by the Sixth Amendment during the pre-trial investigative stage when counsel failed to investigate and participated in making a phony video.

Ground two: The movant was denied his rights to due process and the effective assistance of counsel guaranteed by the Fifth and Sixth Amendments when counsel and FBI agents re-enacted the alleged crimes in a video.

Ground three: The movant was deprived of his right to the effective assistance of counsel guaranteed by the Sixth Amendment when counsel refused to present evidence of a fabricated video based upon his desire to protect Mr. Lancaster from implications of disloyalty.

Ground four: The movant was deprived of his rights to due process and a fair and impartial trial by the perjured testimony by the testimony [sic] of Jeffery Starling, an Ohio highway patrolman who testified in the current proceeding.

Ground five: The movant was denied his rights to due

4

process guaranteed by the Fifth and Fourteenth Amendments when a West Virginia police officer rendered perjured testimony which was willfully and knowingly adduced by the prosecution in its case-in-chief.

Ground six: The movant was denied his right to due process when lead agent Jack Remally [sic: Remaley] committed perjury to place the movant at the scene of the accident based upon the phony, fraudulent video addressed hereinabove with the complicity of the prosecuting attorney, in violation [sic]

Ground seven: The movant was deprived of his right to the effective assistance of counsel when his trial counsel failed and refused to conduct necessary pre-trial investigation.

Ground eight: The movant was deprived of his rights to a fair trial and due process of law in violation of the Fifth, Sixth, and Fourteenth Amendments when a video of a vehicle stop and arrest was fabricated and introduced into the West Virginia proceeding herein.

Ground nine: The movant was deprived of his right to due process guaranteed by the Fifth and Fourteenth Amendments when an FBI agent utilized a different vehicle to manufacture a fraudulent re-enactment of the place of arrest as well as his right to be proven guilty beyond a reasonable doubt.

Ground ten: The movant was deprived of his right to due process protected by the Fifth and Fourteenth Amendments when Trader's Bank employees committed perjury and officers, agents, and employees of the United States destroyed critical evidence concerning said employees.

Ground eleven: The movant was deprived of his right to due process and the right to effective assistance of counsel guaranteed by the Fifth and Sixth Amendments when the highway patrol of West Virginia gave false, perjured testimony and defense counsel did nothing to protect the movant from such perjury.

Ground twelve: The movant was denied his right to the effective assistance of counsel under the Sixth Amendment when counsel failed to seek a <u>Franks</u> hearing to suppress evidence that is tainted and fabricated in violation of the movant's right to due process protected by the Fifth

>and Fourteenth Amendments.
>
>Ground thirteen: The movant is entitled to expansion of the record under Rule 7 to include expert testimony that the vehicle depicted in the fraudulent video is not the same vehicle in the alleged crime scene as well as evidence that the DNA evidence introduced at trial is fraudulent and erroneous.
>
>Ground fourteen: The movant was deprived of his rights to due process, proof of guilt beyond a reasonable doubt and his right to the effective assistance of counsel by the evidence purporting to show that the DNA in a mask found on a roadside was, in fact, the movant's DNA.

(Motion, # 197, at 4-8, 11-17.) By Order entered July 24, 2007, Defendant's Supplemental Motion to Amend § 2255 (# 221) was granted. The Supplemental Motion to Amend addresses the allegedly false video, based on testimony of FBI Special Agent Remaley and Officer Starling. The court will consider Defendant's assertions.

## NORTHERN DISTRICT OF OHIO CASE

The court has determined from review of Defendant's grounds for relief that he makes assertions in this case concerning his prosecution in the Northern District of Ohio on similar charges. United States v. Savoca, No. 1:06-cr-1747 (N.D. Ohio). Defendant was convicted by a jury in that District on seven counts: conspiracy (Count One), bank robbery by force or violence (Counts Two, Three, Four and Six), and using a firearm in relation to bank robbery (Counts Five and Seven). Defendant's direct appeal was unsuccessful. United States v. Savoca, No. 04-4435, 166 Fed. Appx. 183 (6th Cir. Jan. 18, 2006). The Sixth Circuit summarized the facts as follows:

6

> The prosecution offered numerous witnesses who testified about various aspects of robberies and attempted robberies that occurred at federally insured banks in Mentor, Willoughby, Williamsfield, and Concord Township, Ohio, between March 5, 2002, and June 27, 2003. These witnesses explained how the defendant, in conjunction with other individuals, would "case" banks; procure automobiles, either legally or illegally, to transport themselves to the banks at a later time; enter the banks wearing masks and gloves; force employees and customers at gunpoint to lie on the ground; order an employee to open the bank vault while another of the robbers would take money from tellers; and then make their final getaways in cars other than the ones in which they arrived at the banks.

166 Fed. Appx. at 185. Defendant is serving a 70 year sentence on the Ohio convictions. Id., at 190.

Defendant filed a motion pursuant to 28 U.S.C. § 2255 in the Northern District of Ohio on July 19, 2006, which remains pending. Defendant's first and second grounds for relief in Ohio relate to the allegedly "fake" or "phony" video, which is the subject of several grounds for relief in this court. Some of Defendant's grounds for relief in this case are directed toward the Ohio case. It appears that at least one video was shown to the jury in Ohio, and FBI Special Agent Jack Remaley testified at both trials.

### **DEFENDANT'S ATTORNEYS**

When Defendant made his initial appearance in the Southern District of West Virginia on July 28, 2003, Assistant Federal Public Defender George Lancaster was appointed to represent him. On December 17, 2003, Mr. Lancaster moved to be relieved of appointment as counsel, citing an "irreconcilable conflict of

7

interest between Thomas Savoca and another client of the Federal Public Defender." (# 43.) After a hearing before the Hon. Charles H. Haden II, who was then assigned to the case, Mr. Lancaster was relieved.

On December 31, 2003, attorney Carl J. Roncaglione Jr. was appointed to represent Defendant (# 49). On February 26, 2004, the case was reassigned to the Hon. David A. Faber, Chief Judge (# 95). Mr. Roncaglione represented Defendant through trial and sentencing. He filed a notice of appeal, and was appointed by the Fourth Circuit as appellate counsel (# 140).

By letter docketed January 24, 2005, Defendant advised the Clerk that he and Mr. Roncaglione had a conflict of interest (# 173). The Fourth Circuit appointed Barron Helgoe as new counsel for Defendant, and relieved Mr. Roncaglione (# 178).

## ANALYSIS

### Claims Relating to the Videotape

Nearly all of Defendant's grounds for relief concern the admission into evidence of a videotape which Defendant asserts was "fabricated," "fake," or "phony." The undersigned will recite the facts relating to the video, as they are set forth in the record.

As the chase of Defendant entered Ohio in the vicinity of the City of Marietta, Ohio Highway Patrol officers were alerted to the pursuit. Two of the Ohio cruisers were equipped with a video camera, mounted near the rear view mirror. The camera was

activated when the officer turned on the cruiser's blue lights or siren. The camera in the Ohio cruiser closest to the van recorded the chase, including Defendant's rear-ending of a dump truck in a construction zone, and his running into an embankment, resulting in his capture with Santos.

The United States disclosed copies of the videotapes to defense counsel during pretrial discovery, and on the first day of trial, before jury selection, there was extensive discussion of the portions to be shown to the jury. (Tr. Trial, Vol. I, # 149, at 6-26.) On the second day of trial, pursuant to instructions by the court, the prosecution and defense counsel agreed on the portions of the videotapes to be shown to the jury. (Tr. Trial, Vol. II, # 150, at 63.)

One video camera was mounted in a cruiser operated by Ohio State Highway Patrol Officer Jeffrey Lee Starling, who testified as to the events of the chase and capture. Id., at 65-79. A copy of portions of the original video was marked for identification, admitted into evidence without objection by the defendants as Government's Exhibit 23, and played for the jury. Id., at 78-81. The undersigned has viewed Exhibit 23 twice.

A copy of portions of the second video, from a camera in a cruiser operated by Ohio Sergeant Anthony Lauer, was marked for identification and admitted, without objection, as Government's Exhibit 24. When the prosecution attempted to play Exhibit 24 for

the jury, technical problems were encountered. Id., at 81-83). After the noon recess, the prosecution informed the court that "there is nothing on that tape." Id., at 87. The government withdrew the exhibit, without objection from the defense, and the jury was informed. Id.

In his first ground for relief, Defendant claims he was denied effective assistance of counsel when George Lancaster "participated in a purported re-enactment of the crimes in a fake video with federal agents for use in the trial." (Motion, # 197, at 4.) In support of this contention, Defendant includes excerpts from testimony given at his trials in West Virginia and Ohio. He points to minor inconsistencies in the testimony describing the chase as proof that there was a fake video.

His second ground for relief repeats his assertion of a phony video, and contends that the testimony supporting Exhibit 23 was "perjured." Id., at 5.

In ground three, Defendant accuses Mr. Roncaglione of knowing that the video was a fake, and failed to do anything about it, thus demonstrating disloyalty to his client. Id., at 7.

In ground four, Defendant alleges that Ohio Patrol Officer Starling perjured himself at both the West Virginia and Ohio trials. Id., at 8. He asserts that Exhibit 23 shows a blue van, not a gold or bronze van. Id.

In ground five, Defendant claims that a West Virginia officer

committed perjury with respect to whether it was possible to see into the van, despite its tinted windows.  Id., at 11.  Movant asserts that his van's windows were opaque, while the van shown in the video had non-opaque windows.  Id.

In ground six, Defendant alleges that FBI Special Agent Jack Remaley knew that the video was fraudulent, and testified to the contrary in both the West Virginia and Ohio trials.  Id., at 12. Defendant supports his accusation of perjury based on the same minor inconsistency he cited in his first ground for relief.  Id.

In ground seven, Defendant accuses both Messrs. Lancaster and Roncaglione for denying him effective assistance of counsel by failing to investigate the fake video.  Id., at 13.

In ground eight, Defendant characterizes the video as "fabricated evidence."  Id., at 13-14.

In ground nine, Defendant alleges that a blue van was used by FBI Special Agent Wilson to re-enact the arrest scene, and thus commit a fraud upon this court.  Id., at 14.

In ground ten, Defendant claims (correctly) that the bank employees were not shown in the "phony" video; he asserts that there was another, authentic video which was destroyed, constituting a fraud on the court.  Id., at 15.

In ground thirteen, Defendant requests that the record be expanded to include expert testimony that the vehicle shown in the video is not the same vehicle as was in the alleged crime scene.

11

Id., at 16-17.

In Defendant's Supplemental Motion to Amend (# 221), he claims again that the video which is Exhibit 23 is a fake, and erroneously cites "facts" to prove his assertion. His "facts" are not true, as the undersigned has determined after viewing the video.

After review of the entire trial record and Exhibit 23, it is apparent that the only person who has attempted to commit a fraud upon the court is Defendant. His repeated allegations that Exhibit 23 is a fake and not a true depiction of the view through the windshield of the cruiser operated by Officer Starling are false and fraudulent.

The undersigned proposes that the presiding District Judge **FIND** that grounds for relief one, two, three, four, five, six, seven, eight, nine, ten, and thirteen, and Defendant's Supplemental Motion to Amend, have no merit, as they are based on Defendant's spurious assertion that Exhibit 23 was false evidence.

**Allegations of Perjury Regarding Search**

In ground eleven, Defendant claims that two law enforcement agents swore to a false affidavit to obtain a search warrant for the van. (Motion, # 197, at 15-16.) His allegations are derived from his assertion that a false and fraudulent video was created by law enforcement officers.

In ground twelve, Defendant states that he was denied effective assistance of counsel because his attorneys did not move

12

for a Franks hearing to suppress the evidence seized from the van. In Franks v. Delaware, 438 U.S. 154, 155-56 (1978), the Supreme Court held that a criminal defendant is entitled to a hearing on the truth of a warrant's allegations if he "makes a substantial preliminary showing" that the affiant's statements, essential to the probable cause determination, were either intentionally false or in reckless disregard of the truth.

Defendant's spurious allegations that law enforcement officers created a false video do not constitute the substantial preliminary showing necessary to justify requesting a Franks hearing.

The undersigned proposes that the presiding District Judge **FIND** that grounds eleven and twelve lack merit.

### DNA

Defendant's fourteenth ground for relief is a claim that he has "an expert witness demonstrating that the DNA evidence is false and erroneous." (Motion, # 197, at 17.) Defendant has not provided any affidavit or similar declaration under penalty of perjury by an expert witness which is contrary to the testimony provided at the trial.

The undersigned proposes that the presiding District Judge **FIND** that ground fourteen lacks merit.

### Appeal Grounds

At the end of his Motion, Defendant argues that grounds five through fourteen were not raised on appeal by his attorney, despite

his specific request that they be argued. It is apparent that raising such frivolous and false arguments could have subjected an attorney to imposition of sanctions.

Based on the foregoing, it is respectfully **RECOMMENDED** that Defendant's § 2255 Motion and Supplemental Motion to Amend be denied.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S.

140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the United States Attorney, Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant and counsel of record.

   September 5, 2007  
          Date

Mary E. Stanley  
United States Magistrate Judge